UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re* DENHAM HOMES, L.L.C., | ) |
| Debtor, | ) |
| DENHAM HOMES, L.L.C., | ) No. 13 C 00485 |
| Appellant, | ) Judge John J. Tharp, Jr. |
| v. | ) |
| TECHE FEDERAL BANK, N.A., | ) |
| Appellee. | ) |

## MEMORANDUM OPINION AND ORDER

This case involves the appeal of an order issued by the U.S. Bankruptcy Court for the Northern District of Illinois dismissing the Chapter 11 case of Denham Homes, L.L.C., and a motion to dismiss Denham's appeal as moot by its primary creditor, Teche Federal Bank. For the below reasons, the Court grants the motion to dismiss and vacates the Bankruptcy Court's order.

### I. BACKGROUND

Denham Homes, L.L.C. ("Denham"), an Illinois limited liability company, was the developer and owner of approximately 103 acres of real property in Denham Springs, Louisiana, (the "Property"). Denham planned to develop the Property into a 276–lot planned residential subdivision called Crystal Lakes. Unfortunately, Denham did not fare well in completing the project, despite having obtained approximately $5.6 million in financing and a line of credit from Teche Federal Bank ("Teche"), Denham's primary creditor. On January 28, 2010, Denham initiated a bankruptcy case in the Northern District of Illinois by filing a voluntary petition for

reorganization under Chapter 11 of the Bankruptcy Code. Teche and Denham eventually entered into a settlement agreement concerning Denham's reorganization. A Fourth Amended Plan of Reorganization (the "Plan") that incorporated the terms of their settlement agreement was filed on April 11, 2011, and confirmed by the Bankruptcy Court on April 21, 2011. The effective date of the Plan was May 6, 2011. Denham's motion for final decree was granted and the bankruptcy case was closed on November 17, 2011.

The Plan provided that Denham's reorganization would be funded through the sale of the undeveloped home sites on the Property. The Plan categorized Denham's pre-petition debt into separate classes of claims, each of which would be treated differently over the course of Denham's planned reorganization. Teche held a Class 2 Claim, which was a fully secured, interest-bearing claim in the principal amount of $5,451,697.45, plus $150,000 in fees and costs. Teche also held a Class 10 Claim in the amount of $764,086.39 that was to be paid from the proceeds of the sale of five model homes built on the Property. Seven creditors with mechanics lien claims held the Class 3–9 Claims, which totaled $410,821 in aggregate. There were no Class 11 Claims, which were defined by the Plan as any other allowed claim secured by an interest in the Property. The Class 12 Claims comprise several unsecured claims, including one that was then the subject of active litigation in Louisiana at the time the Plan was filed. Diversified held an unsecured Class 13 Claim. Anderson Associates LP ("Anderson"), which is controlled by Denham's principal William Spatz, held an unsecured Class 14 Claim.[1]

---

[1] The Plan provided that if Teche's Class 10 Claim was not paid off by the first anniversary of the Plan's effective date, Denham would be in default under that limited provision and Teche could foreclose on any unsold model home for which it still held a mortgage. Only one model home was sold and Teche's Class 10 Claim was not paid off by the anniversary. Consequently, in June 2012, Teche instituted foreclosure proceedings in Louisiana on the four unsold model homes. On August 9, 2012, Anderson paid Teche the balance that remained on Teche's Class 10 Claim and Teche released its mortgage on the unsold homes.

The Plan set out a schedule for how the proceeds would be distributed to the various classes as sales of home sites progressed. Initially, 50% of the proceeds from each lot sold would be paid to Teche's Class 2 Claim and 50% would be paid pro rata to the Class 3–9 and Class 11 Claims. After the Class 3–9 and Class 11 Claims were paid off, 70% of the proceeds from each subsequent lot sale would be paid to Teche's Class 2 Claim, with the remaining 30% paid to Teche's Class 10 Claim. The Plan provided that Anderson's Class 14 Claim would be paid from home site proceeds only after all other allowed claims were paid in full.

The Plan also set a schedule of benchmarks for Denham's planned lot sales and payments to its creditors. By the first anniversary of the Plan's effective date, Denham was to have sold at least forty home sites and collected proceeds of at least $1,080,000, and was to have sold fifteen undeveloped acres of the Property for at least $165,000. By the second anniversary, Denham agreed to have sold at least ninety home sites for at least $2,680,000. By the third anniversary, Denham agreed to have sold at least 140 home sites for at least $4,380,000. The benchmarks for the fourth anniversary were 180 home sites for $6,232,000; by the fifth anniversary, Denham was to have sold the remaining developed home sites and collected at least $7,884,400. If Denham failed to meet any of the benchmarks, it would be in default under the Plan. Teche would then have the right to foreclose on its mortgage, and, according to the Plan, Denham would not to oppose the foreclosure.

Denham proceeded to sell nineteen home sites by December 21, 2011, and to pay Teche 50% of the proceeds of those sales. Earlier that month, however, Teche had learned that the Class 3–9 Claims had been paid in full and canceled from the public records of Livingston Parish, Louisiana on August 25, 2011, before the first lot in the Crystal Lakes subdivision had been sold. Thus began a hard-fought dispute between Teche and Denham about the effect of this

payment and the cancellation of the liens. On December 20, 2011, Denham told Teche that Anderson—not Denham—had paid the holders of the claims; then, on December 27, 2011, Denham told Teche that it was Summa Associates, LLC, who purchased those claims from the original lienholders. Teche demanded an accounting of what home site proceeds had been collected and applied to the Class 3–9 Claims. After objecting to the first accounting provided by Denham, Teche again demanded an accounting, this time requesting that Denham provide proof that the Class 3–9 Claims were paid, the amount paid to each claimant, the name of the entity that actually paid the claimants, and copies of the checks used to pay the Class 3–9 Claims. Denham then represented that Port Allen Associates, the principal of which is also Denham's principal, William Spatz, paid the claims and produced copies of cancelled checks that showed that Port Allen made the payments. Further investigation by Teche, however, revealed that the checks Denham produced never passed through Port Allen's bank account. Bank records showed that it was Anderson who paid the Class 3–9 Claims, as well as a Class 12 Claim, on August 25, 2011.

The dispute between Teche and Denham came to a head as Denham attempted to complete the home site sales necessary to meet the first anniversary benchmark. On April 17, 2012, Teche received a purchase agreement for the proposed sale of twenty-one home sites to Crystal Lakes, LLC. Teche, believing it was rightfully owed 70% of the proceeds of these sales because the holders of the Class 3-9 Claims had been paid, agreed to allow the sale of the lots and receive 50% of the proceeds if an additional 20% was put into escrow until the disagreement over the correct distribution was resolved. Denham rejected this proposal. After Teche and Denham agreed to extend the deadline for the first anniversary benchmark by forty-five days, Denham then proposed a sale of twenty-six home sites, offering to disburse 70% of the proceeds

to Teche—which then countered by requesting 100% of the proceeds. In the end, Teche did not agree to remove its encumbrances on the Property, and Denham did not complete any additional sales. Teche provided Denham with a notice of default on July 18, 2012.

The next day, Denham filed a motion to reopen its Chapter 11 case, which was granted on August 27, 2012. Denham additionally moved to modify the Plan and to enforce payment of the claims provisions of the Plan; Teche objected to both motions. The motion to modify the Plan was eventually withdrawn by Denham and stricken from the record. The latter motion to enforce the payment provisions of the Plan was denied by the Bankruptcy Court after an evidentiary hearing. The Bankruptcy Court held that (1) Denham did not follow the terms of its confirmed plan of reorganization with regard to distributions made to Anderson from various property sales and (2) Teche properly refused to release its mortgage liens as to prospective property sale transactions as requested by Denham. Additionally, the Bankruptcy Court adopted Teche's proposed findings of fact and conclusions of law and closed Denham's Chapter 11 case pursuant to 11 U.S.C. § 350(a), stating that the parties could "address any other or additional issues in the state courts in Louisiana, where [Denham's] real property is located."

Denham appealed the Bankruptcy Court's decision to this Court. On appeal, Denham argues that the Bankruptcy Court erred in concluding that Denham violated the terms of the Plan as well as in concluding that Teche was excused from its duty to release mortgage liens to permit Denham to close on sales to meet the Plan's benchmarks.

While this dispute played out in the Bankruptcy Court, Denham failed to meet the first anniversary benchmarks under the Plan. Teche provided Denham a second notice of default on November 28, 2012, and instituted foreclosure proceedings on the Property in Livingston Parish, Louisiana. A petition for executory process was filed on behalf of Teche on December 18, 2012,

and Denham was served with notices of seizure and to appoint an appraiser. Denham did not oppose the seizure and sale of the remaining Crystal Lakes property, which was sold to a third party at public auction on March 13, 2013 (while Denham's appeal was pending), for $3,901,000 in cash. The Sheriff of Livingston Parish filed a request for cancellation on March 19, 2013, which was recorded in the mortgage records and had the effect of canceling all encumbrances against the Property, including Teche's mortgage. Teche cites the sale as a basis for its motion to dismiss Denham's appeal. It argues that because Denham's reorganization was premised on its ability to sell home sites on the Property, the appeal is now moot.

## II. DISCUSSION

Federal district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" of "bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges." 28 U.S.C. § 158(a). "District courts sit as appellate courts when hearing appeals from bankruptcy courts." *Hijjawi v. Five North Wabash Condo. Ass'n*, 491 B.R. 876, 880 (N.D. Ill. 2013) (citing *In re Neis*, 723 F.2d 584, 588 (7th Cir. 1983)). Article III of the Constitution, however, restricts federal courts to hearing "cases or controversies" during all stages of review. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008). It is not enough for a live dispute to have existed when a case was filed or appeal taken; parties must continue to have a "personal stake in the outcome" in order for federal jurisdiction to lie during an appeal. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990). "If, by virtue of an intervening event, the appellate court cannot grant 'any effectual relief whatever' for the appellant, the court must dismiss the case as moot." *In re Repository Techs., Inc.*, 601 F.3d 710, 716–17 (7th Cir. 2010) (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam)). If a possibility of partial relief exists, by contrast, the appeal is not moot. *In re Envirodyne Indus., Inc.*, 29 F.3d 301, 304 (7th Cir. 1994).

The party asserting mootness bears the burden of demonstrating it. *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979).

In support of its mootness allegation, Teche argues that because Denham now has no assets with which it might reorganize, there is no relief that can be provided to it by the reversal or modification of the Bankruptcy Court's order. According to Teche, "[n]ow that Denham Homes has lost its only asset [(the Crystal Lakes lots)], it cannot effectuate a plan of reorganization regardless of how this Court rules." Mem. 9, Dkt. 15. The primary case on which Teche relies, *In re Repository Technologies, Inc.*, 601 F.3d 710, 717 (7th Cir. 2010), involved an appeal from a decision affirming a bankruptcy court's order denying in part the request of Repository Technologies, Inc. ("RTI") to equitably subordinate and recharacterize as equity indebtedness to a former shareholder on the grounds that the shareholder breached his fiduciary duties and engaged in inequitable conduct. The bankruptcy court recharacterized a portion of the debt, but dismissed the case in light of RTI's concession that absent full recharacterization and subordination, it could not put forth a confirmable plan of reorganization. In a separate finding, the court also rejected the former shareholder's argument that RTI had filed for bankruptcy in bad faith. *Id.* at 715. After the bankruptcy case was dismissed, RTI's assets were sold off. In the subsequent appeal of the bankruptcy court's order, the Seventh Circuit concluded that the sale of RTI's assets had rendered the case moot on appeal. It explained that the dispute over the recharacterization of the debt was only relevant to RTI's ability to reorganize under Chapter 11. Following the unstayed, unappealed sale of its assets after the close of the bankruptcy case, the impossibility of RTI's reorganization prevented the court from being able to offer any meaningful relief to the parties. *Id.* at 716–17. Recognizing that the former shareholder really sought to challenge the bankruptcy court's good-faith finding in order to avoid its potentially

preclusive effect in future cases, the court noted that such a "challenge to the bankruptcy court's dictum does not create a justiciable controversy on appeal because 'dicta are not appealable rulings.'" *Id.* at 718 (quoting *Chathas v. Local 134 IBEW*, 233 F.3d 508, 512 (2000)).

Denham does not contest that it is now without assets, nor does it contest that it is no longer in a position to reorganize as it had proposed to do under the Plan. Instead, Denham argues that the Bankruptcy Court's errors still affect an ongoing dispute between Denham and Teche. Denham's primary concern is that Teche may seek to recover the difference between the amount it is owed on its mortgage and what it recovered from the foreclosure sale in Louisiana. Denham asserts that the enforceability of any remaining deficiency will turn on an issue raised in this appeal: whether the Bankruptcy Court erred in determining that Teche acted properly when it refused to remove its liens to allow further sales of home sites.

That Denham and Teche may yet have disputes arising from their relationship, however, does not mean that their dispute over the Plan remains live. The question on appeal—whether Teche acted properly in refusing to release its liens—was only relevant to Denham's motion to enforce the claims payment provisions of its Plan. Once that motion was denied, the bankruptcy case was dismissed, and Denham's property was (consistent with the terms of the Plan) sold at auction without any action by Denham to prevent or stay the sale, meaningful relief on appeal from the bankruptcy proceedings was outside the reach of the parties, just as it was in *In re Repository Technologies*. The sale of Denham's assets mooted the controversy in its bankruptcy case, as Denham cannot now reorganize without any assets. Nothing this Court can do now will provide any meaningful relief to Denham; Teche has released its liens and the remaining lots have been sold. The remaining dispute between the parties relates to a claim that the sale proceeds did not make Teche whole, but that dispute does not implicate the parties' compliance

with the terms of the Plan. The Plan and the Settlement Agreement provide that Denham's failure to meet the prescribed sales benchmarks is an event of default; upon five days notice of default, the automatic stay of foreclosure would be lifted, allowing Teche to foreclose and seek the value of its mortgage—in state court. *See In re Denham Homes, L.L.C.*, No. 10-03164 (Bankr. N.D. Ill. Nov. 29, 2012) (Dkt. 417) (stating that parties may "address any other or additional issues in the state courts in Louisiana, where [Denham's] real property is located").

Denham's objective in this appeal is not to achieve a result that is relevant to the bankruptcy case, but only to the outcome of future litigation with Teche regarding any remaining deficiency Teche may seek to recover in state court. Put simply, Denham likes its chances of obtaining a contrary ruling about Teche's conduct in this Court better than state court. Denham maintains that dismissing this appeal as moot would "unfairly require Denham to re-litigate the same issues before a jurisdiction that is less familiar with bankruptcy laws generally and the terms of the Approved Plan in particular," Resp. at 6, but federal courts do not have the authority to decide issues simply because they may be more familiar with the legal issues those cases present. If this Court were to decide the appeal now—which is to say, if this Court were to issue an opinion as to whether Teche acted in bad faith in refusing to remove its liens—it would effectively be issuing an advisory opinion that Denham would use to shield liability in any future state court action(s) Teche may initiate related to the deficiency, but that opinion would provide no relief to Denham in this case. Denham's hope of avoiding an adverse precedent in other litigation with Teche does not vest this court with jurisdiction. *In re Repository Techs., Inc.*, 601 F.3d at 718–19 (concern about preclusive effect of bankruptcy ruling in other litigation does not provide jurisdiction to review that ruling); *In re Smith*, 964 F.2d 636, 638 (7th Cir. 1992).

If it cannot go forward here, Denham argues that this Court should, at a minimum, vacate the Bankruptcy Court's order to prevent Teche from relying on it as fully adjudicated. The Seventh Circuit has noted that "in order to protect the appellant against a preclusive (res judicata or collateral estoppel) use of an unappealable order, the appellate court will order the previous orders in the case dismissed at the same time that it dismisses the appeal," unless "the appellant, fearing that he will lose the appeal, abandons it." *In re Smith*, 964 F.2d at 637 (citing *United States v. Munsingwear*, 340 U.S. 36, 39 (1950)). Vacatur is appropriate to prevent the potential preclusive effect of an unappealable order. *Id.* The Supreme Court has instructed that courts should dispose of moot cases "in the manner 'most consonant to justice' . . . in view of the nature and character of the conditions which have caused the case to become moot." *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994) (quoting *United States v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft*, 239 U.S. 466, 477–478 (1916)). Where mootness arises by the unilateral action of the party that prevailed below, the party who is frustrated in seeking review of an adverse ruling ought not, in fairness, be subjected to its preclusive use in other proceedings. *Id.*; *see also In re Smith*, 964 F.2d at 638 ("We vacate unappealable decisions, to prevent them from having a preclusive effect."). Teche, the prevailing party below, initiated the foreclosure proceedings that eventually rendered this case moot.[2] With

---

[2] Teche argues that Denham failed to take any action to stop the sale, but the fact remains that Teche was the moving force in causing the sale to happen. It was within its rights to do so, but since that action mooted Denham's ability to appeal the Bankruptcy Court's ruling, the Court finds that it is reasonable to deny the Bankruptcy Court's order preclusive effect by vacating it. This does not, however, erase the Bankruptcy Court's opinion; as the Seventh Circuit noted in *In re Smith,* unappealable decisions are vacated to prevent them from having preclusive effect, but "vacating a decision because of supervening mootness does not destroy its precedential effect, since the decision was not moot—was not outside the jurisdiction of the court that rendered it—when it was rendered." 964 F.2d at 638. Thus, the Bankruptcy Court's analysis of Teche's conduct regarding the liens remains available to any court that finds it to be persuasive; the order itself, however, does not preclude a contrary determination by any other court.

Denham's appeal so thwarted, it is appropriate to vacate the Bankruptcy Court's order at the same time this appeal is dismissed.

*   *   *

For the reasons stated above, the motion to dismiss [14] is granted, the Bankruptcy Court's order is vacated, and the case is dismissed.

Date: March 21, 2014

John J. Tharp, Jr.
United States District Judge